Joseph L. Francis died October 11th, 1943, leaving a will dated September 27th, 1943, and duly probated by the surrogate of Essex County on October 25th, 1943, in which Charles Hood, the complainant, was named as executor and who qualified as such.
The testator in his lifetime acquired title to a one-family dwelling at 88 Wickliffe Street, Newark, and of a two-family dwelling at 13 Vine Street, Newark.
On June 26th, 1943, the decedent was seventy-six years old and in receipt of a monthly pension of $30 from the Pullman Company, and the income from his real estate. He owned five shares of the common stock of the New York Central Railroad Company, valued at $17.62 1/2 a share, and eleven shares of the common stock of the Pullman Company valued at $34.50 a share.
On June 26th, 1943, Francis deeded his real property to his sister, Mary R. Brown, without consideration and at a time when the sister enjoyed a confidential and dominant position, for which reason the conveyance, it charged, was voidable, whereupon Mrs. Brown and her husband on July 15th, 1943, in order to avoid litigation, conveyed the property to complainant as trustee, in trust for the following purposes:
"For and during the term of the natural life of Joseph L. Francis to collect the rents, issues and profits of said lands and premises, to manage the same and to pay the net income thereof, after deducting all charges, to the said Joseph L. Francis during his lifetime and upon the death of the said Joseph L. Francis to convey the aforesaid lands and premises to such person or persons as the said Joseph L. Francis shall, by his Last Will and Testament, designate and in default of such appointment to his heirs at law."
It is admitted that in the intervening period between the making of the deed by Francis to his sister, Mrs. Brown, and the time of the conveyance by Mrs. Brown to complainant, Francis collected the rents from said premises, and that he also collected the rent after the execution and delivery of the deed to complainant as trustee pursuant to authority given him by complainant, through an agent which he (Francis) appointed. When Francis died he left him surviving as his *Page 202 
heirs-at-law his sister, Mary R. Brown, and a nephew, Joseph T. Francis, a son of a deceased brother.
In paragraph second (a) of his will, the testator bequeathed to his sister, Mary R. Brown, and to Signora Herbin, in equal shares, the proceeds of a certain group insurance plan of the Pullman Company. By paragraph second (b) of his will he directed complainant to "sell all my real and personal property of which I may die seized or possessed, upon such terms and conditions as in the discretion of my executor may be advisable, and as soon as in his judgment it is to the best advantage of my estate, and I direct my executor to pay the proceeds of such sale in manner following: as set forth in paragraph (b) below:" In paragraph (b) appear bequests to Fannie Bell $100; James P. Wilson $100; Selma E. Laulicht $100; Donald Livingston $25, and Colored Presbyterian Church (the correct name is stipulated to be Thirteenth Avenue Presbyterian Church, Newark, New Jersey) $50. In the third paragraph of the will it is provided that:
"All the rest, residue and remainder of my estate, after the sale by my executor, of the real property of which I may die seized and the payment of the legacies specified in subdivision (b) in the second paragraph of this my Last Will and Testament, I give, devise, and bequeath to my nephew, Joseph T. Francis, of Morris Plains, Morris County, New Jersey."
All that decedent possessed at the time he executed his will September 27, 1943, and when he died October 11th, 1943, was five shares of common stock of New York Central Railroad Company, valued at $88.13; eleven shares of the common stock of the Pullman Company valued at $379.50, and miscellaneous personal effects, valued at $50. His debts, payable by his estate, are a balance on his funeral bill $192; hospital bill of $32.20; inheritance tax of $104.37 and administration expenses estimated at $250, so that his estate at the time of his death (if the real estate is excluded) was insufficient to pay his debts, administration expenses and legacies.
Complainant, as executor, on February 23d 1944, sold the premises 13 Vine Street to Unique Holding Company for $1,300, and on April 3d 1944, entered into contract as executor *Page 203 
to sell the premises 88 Wickliffe Street to Unique Holding Company for $900, the title to which it refuses to take upon the ground that the testator's will did not operate as an exercise of the power of appointment under the trust deed.
On December 16th, 1943, Joseph T. Francis assigned a one-third share of his right, title and interest in the testator's estate to Signora Herbin. This assignment was made to avoid threatened litigation. Unique Holding Company conveyed premises 13 Vine Street on May 22d 1944, to Frank Butts and Mary Butts, his wife, who on the same day executed a purchase-money mortgage to Unique Holding Company for $1,700. The testator at all times regarded the real estate in question as his own property. The facts set forth are contained in an agreed state of facts.
The bill prays for construction of the last will and testament of Joseph L. Francis and of the deed by Mary R. Brown and Robert, her husband, to the complainant as trustee (1) whether said last will and testament constituted an appointment by testator of the real estate covered by said deed to the persons described in paragraph second (b), and by the third paragraph of testator's will (2) whether complainant has the power as executor to sell said real estate as part of testator's estate, or (3) whether there was default by the testator in appointing said real estate and complainant as trustee should convey the said premises to Mary R. Brown and Joseph T. Francis, testator's heirs-at-law, and if so (4) complainant as executor should refund to Unique Holding Company the money paid to him as the purchase price for 13 Vine Street.
The factual situation having been stipulated, all necessary and legitimate inferences may be drawn therefrom and considered by the court since such inferences are in legal effect a part of the agreed facts. Moran v. Fifteenth Ward Building and LoanAssociation, 131 N.J. Eq. 361; 25 Atl. Rep. 2d 426.
The defendants Joseph T. Francis and Mary R. Brown in their counter-claim allege, and by their solicitor contend, that the power of appointment was not exercised by the decedent, that he could only appoint directly and could not direct his executor to sell the real estate, since the deed directed complainant *Page 204 
as trustee "upon the death of the said Joseph L. Francis to convey the aforesaid lands and premises to such person or persons as the said Joseph L. Francis shall, by his Last Will and Testament, designate and in default of such appointment to his heirs at law."
Such a power is not limited but general and unlimited. A power to appoint "to such person or persons, corporation or corporations, as she shall by her last will and testament in writing appoint" was declared unlimited in Guild v. Mayor, c., of the City of Newark, 87 N.J. Eq. 38; 99 Atl. Rep. 120, and a like provision in Brown v. Fidelity Union Trust Co.,126 N.J. Eq. 406, 422; 9 Atl. Rep. 2d 311, was held to have created a general power of appointment. Where the power is general, the donee of the power may appoint to various persons in varying amounts (Brown v. Fidelity Union Trust Co., supra), and may also appoint by directing a sale through a trustee or an executor and the division of the proceeds in varying amounts to various persons.
The second paragraph of the will is not a residuary clause but a direction that his executor sell testator's "real and personal property of which I may die seized or possessed." In that paragraph he makes certain bequests, and in the third paragraph he provides that the remainder of his estate "after the sale by my executor, of the real property * * * and the payment of the legacies specified * * * I give, devise, and bequeath to my nephew, Joseph T. Francis * * *."
At the time the will was executed the testator was not possessed of legal title to any real estate. Complainant as trustee held title, although the decedent collected the rents until the time of his death, and regarded the real estate as his own. So that when he speaks in his will of "my real * * * property of which I may die seized or possessed" and as "the real property of which I may die seized" it cannot be doubted that he referred to the real estate covered by the deed to complainant as trustee.
Where it appears from a reading of the will and the circumstances at the time of its execution that the testator intended to exercise a power of appointment, he must be deemed to have done so notwithstanding he did not use any express *Page 205 
words for that purpose. It is so well settled in law as not to require citation of authority that the court must ascertain and give effect to testator's intention as disclosed by the entire will in the light of the situation surrounding him at the time of its execution, and for such purpose extrinsic evidence is admissible. This rule likewise applies to the determination of the question whether a donee by his will intended to execute a power reserved to him.
Three classes of cases have been held to be sufficient demonstration of an intended execution of a power: (1) Where there has been some reference in the will, or other instrument, to the power; (2) or a reference to the property, which is the subject on which it is to be executed; (3) or, where the provision in the will or other instrument, executed by the donee of the power, would otherwise be ineffectual, or a mere nullity; in other words it would have no operation, except as an execution of the power.
The facts admitted before the court bring the instant case within the third class of cases. The situation in this case is not unlike the one in Paul v. Paul, 99 N.J. Eq. 498;133 Atl. Rep. 868, and Camden Safe Deposit and Trust Co. v. Fitler,123 N.J. Eq. 245; 197 Atl. Rep. 249; affirmed, under the name ofCamden Safe Deposit, c., Co. v. Frishmuth, 125 N.J. Eq. 169;4 Atl. Rep. 2d 379.
In Paul v. Paul, supra, the testatrix clothed with power to dispose of the trust fund by her will, had practically no property of her own to dispose of. She made a great number of money bequests ranging from $300 to $3,000 in amounts, and aggregating approximately, the amount of the trust fund. Since there was practically nothing for these several bequests to operate on except these funds, and under the trust testatrix was clothed with power to make these bequests, it was held that in making the bequests she was exercising that power. And said the Vice-Chancellor: "* * * The circumstance that in her will she made no specific reference to the power should not be regarded as sufficient to negative that intent, if, by necessary implication, the intent is otherwise clearly manifest. Cueman v. Broadnax,37 N.J. Law 508, 513; Munson v. Berdan, 35 N.J. Eq. 376;Wooster v. Cooper, *Page 206 59 N.J. Eq. 204, 223; Meeker v. Breintnall, 38 N.J. Eq. 345,356; Lippincott v. Haviland, 93 N.J. Eq. 585, 587. * * * The testimony to the effect that at the time the will and its codicil were made testatrix owned practically nothing on which these bequests could operate, except the trust estate * * * adequately discloses that obvious situation. * * *" In Camden Safe Depositand Trust Co. v. Fitler, supra, it was held that where the provisions of the testator's will are inoperative without the use of a fund over which the testator had power of appointment, the power to appoint was exercised. And in Board of Home Missions, c., v. Saltmer, 125 N.J. Eq. 33, 36; 4 Atl. Rep. 2d 69, Vice-Chancellor Berry said: "* * * It is not necessary that the power should be referred to in the instrument to effect an execution, where the intent is otherwise manifested, it being sufficient if the power exists and is intended to be executed. * * *"
In view of the surrounding circumstances existing at the time of testator's will, it is concluded that he intended to dispose of the property described in the deed of trust to complainant over which the testator had the power of appointment. To hold otherwise, would be to hold the provisions of his will nugatory. *Page 207